Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court Fifth District State of Illinois is now in session. The Honorable Justice Cates presiding along with Justice Wharton and Justice Vaughn. The first case this morning is number 520-0349 in the interest of Makayla H. Olivia H. Micah H. Minors. Arguing for the appellant minors is Alexander Fine. Arguing for the appellate people of the state of Illinois is Jennifer Camden. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. And please note only the clerk of the court is permitted to record these proceedings today. Okay, Mr. Fine, are you ready to proceed? I'm ready to proceed, Justice Cates. Proceed then. Good morning. My name is Alexander Fine, and I represent respondent father, Mike H. Your Honors, this case involves a drastic measure resulting in the termination of parental rights of father, Mike H. Imperfect and struggling with chemical addiction, a father who nonetheless loves his children and in the pursuit of this fundamental right to raise his children deserves the opportunity to have this day in court, just as the mother did in this case. Mike H. respectfully requests this court to reverse the trial court's order terminating his parental rights and remand this case to the trial court for a new best interest hearing for two reasons. First, the trial court's decision to find Mike H. unfit was against the manifest weight of the towards the service plan goals. Second, termination of parental right is a drastic measure which impacts the child, the child's entire family, the parent, and society. And therefore, the ruling should be reversed and remanded to give Mike H. an opportunity to present his case at a best interest hearing. My first argument, the decision by the trial court finding Mike H. unfit at the fitness hearing, and as a result, proceeding to the best interest hearing in Mike H.'s absence and terminating his parental rights was based on flawed, inconsistent, and incomplete the CFS service plan recommendation, which altogether was against the manifest weight of the evidence for two reasons. First, the Supreme Court of Illinois determined that measuring a parent's fitness progress only in terms of compliance with the service plan could produce unjust results, and Ray CN. Secondly, in solely relying on the service plan, the trial court dared to determine Mike H. did not make progress toward reunification. To the first point, here the trial court's ruling produced unjust results because it only relied on the CFS service plan to measure Mike H.'s progress. The service plans were riddled with inconsistencies. The first caseworker, and I'll refer to her by her last initial, Ms. S., and Mike H. had to have negative drug tests. The DCFS personnel cannot administer drug tests to those who are incarcerated during their service plan, and when asked is the assumption that he would be negative for all substances while he's incarcerated, she replied by stating that would be the assumption. Caseworker S., and let me stop here briefly for just a minute, imagine the dates we're concerned with starts with March 7, 2018, because that was the date of adjudication. The first nine-month period was between March and December of 2018. The second nine-month period was between March of 2019 and December of 2019, and justices, I want you to have those periods, those specific periods, those are the two nine-month periods we're talking about, and then to the side of that, consider that essentially between March of 2018 and June of 2019, my client was incarcerated in the Department of Corrections. Now, I understand the law is that doesn't toll the period, but as I mentioned these, what I refer to as flaws and inconsistency, for example, Caseworker S., who really only administered her services to Mike H., was for the first five months of that service plan. Now, she said that she didn't check to see if he signed up for parenting classes, and as we'll find out later, even if he did, as he did a type of parenting class, DCFS wouldn't approve it. Mike didn't get a copy of that first service plan and didn't sign for it. Why? Because he was already incarcerated. He was rated unsatisfactory. Another caseworker took over. Now, she actually took over, I believe, in December of 2018. If you look at a few months between September and November, it appears that there was really no caseworker administering anything or covering that plan, but Ms. L. took over, and she went back to that reviewing what the other caseworker did, and still the finding was that it was unsatisfactory. Judge, the service plans did not mention key factors in their unsatisfactory ratings of Mike H.'s progress, and I'm reading from my brief on page 10 this important paragraph. Ms. L. testified that a person must complete each, referring to DCFS service plan, recommendations without failing or missing any part of it to be found satisfactory during the entire six-month period. She stated that if a person is tested for drugs during the six-month period and passes all drug tests except for one, they would be evaluated as unsatisfactory during the entire six-month period. Then she testified that a person incarcerated is automatically rated unsatisfactory because DCFS personnel cannot administer drug tests in prison. She said that it was his actions that caused him to be in prison, and therefore she could not administer drug tests. Mr. Fine, isn't that the law in Illinois that once you become incarcerated that that is a situation that was created by the respondent here? Yes, and we understand that, but this goes to the entire, I guess, decision as to whether or not that he was making efforts. I understand what the law is, but at the same time, what I'm hoping that the court will at least recognize is this is a man who, as I will show, was trying to do things but could not. Well, when you, he was incarcerated and not incarcerated, I should say in custody. He was in custody multiple times during this period. Yes. Oh, and you're asking DCFS, it seems, to climb a large hill in order to accommodate your client. No, I'm just asking that that they at least note the progress he made, and that's when, as I go into this, I'm just trying to note that there was some indication that there wasn't an individual who was just sitting and doing nothing. But is an indication enough under the law? I would not argue that. I would just say, in order, as I develop my argument into my best interest, my request that it be remanded, these are things that I think the court can consent. Thank you. Mr. Fine, can I ask you a question, please? Yes, sir. Yes, Justice. All this occurs when the court's considering what's in the best interest of the child. Right here, you have a circumstance where the children are doing well in school. They are well adjusted, and everything is in limbo. From all indications, they're worried about this outcome, that they may have to go back with their father. We're working on this reasonable progress standard, but reasonable progress is a varying standard when you look at the total history. What might be reasonable progress in one circumstance would not be in a situation where a family has had a long history of issues. We could look at this and say, yeah, he's making some progress, but is it reasonable when we look at this in the perspective of the long history of the family's involvement? Justice, that is fair commentary. As I go through this argument, at least challenging the manifest way to the evidence in this first argument, what I'm getting at, and I'll move a little quicker forward to that, is that at the end of the day, and if we don't reach, if the respondent cannot reach the argument that it was against the manifest way to the evidence, the purpose in showing what he has done is important. For example, while he was in, he had a Drugs and Society Certificate, an Inside Out Dad Certificate, an Interpersonal Skills Computer Certificate. What this does, it goes to the point to show that he was trying and culminating in where we're, where I guess the import of this argument is, at the best interest hearing, he was denied a continuance. He was present at the fitness hearing, but he was not present. Now, while I put in my brief, unable, that actually may be unfair because the counsel was asked, did you send him, or the counsel was asked by the court, did you send him notice? And the counsel said, yes, I did send him notice. She didn't know why he wasn't there. But what we do know is he was there for the fitness hearing. He believed that was important. And while I cannot presume or assume as to why he wasn't there, the fact is he did find out about the result and wanted to appeal it. Now, Justices, I do put in this motion that he was denied this hearing, and we were in the midst of a global pandemic. I understand that may be stretching a little bit, but we all remember certain times when, in a sense, time seemed to stop. What I'm getting at here is that if Mike H., having done a lot of things while he was in prison, those that he could do, he did what he could, that granting him a best interest hearing is not only in his best interest, because we know the purpose of a best interest is what's in the children's best interest, but it's still in the children's best interest. And Justice Wharton, I understand when you deal with everything the kids have already been through and the fact that they're in some stable environment, I still say that it's important in this case for Mike H. to have had that opportunity. Even counsel, even state, commented, well, you know, the defense counsel didn't produce any witnesses, but at the same time commented that, you know, no one there was there to testify, you know, and we granted... I'm sorry to interrupt, but this court, the Fifth District, has held in past circumstances, in a case called In Re CLT, that the respondent doesn't need to be present at these kinds of hearings, and it's not a denial of their due process. Judge, from my perspective, and I respect that holding, is that what we would have here had had the opportunity to testify, would at least be able to reaffirm his love, his interest, and his willingness, and that was an important date for him as well. He's not filed anything as to why he wasn't there. I mean, this was not the first time that the case was set. I think it was the third time the case was actually set. And Judge, what happened at the time that it actually came to that fitness hearing, and the state asked for a continuance because mom wasn't there, and that continuance is granted where Mike's wasn't granted. Now, we would argue that if the case is going to be reset to a different date, it certainly would not have hurt to go ahead and for whatever reason, under the circumstances that we were facing in this country, even not knowing why he wasn't there. It would not have hurt. It would not have done anything to even put the kids at any risk because they were in a stable environment. We were probably talking a couple of months in order to excuse me. Isn't it true that the mother's continuance was granted because she was not given notice, but the father was given notice? The father was given notice, the mother was given notice, but she's incarcerated. And granted, Justice Vaughn, it was no fault of hers. But almost what I'm saying, and I ask for your consideration in this, in one hand, you have a man who's in prison, and he cannot get the services that he needs. And we're not using that as an excuse to pull time. We're just saying that's a fact. And once the state has him there, if all we look at is these service plans, and that's the standard, then for those who are incarcerated, there's really no hope. What I'm asking is just that, your honors, if you can give a chance and remand this back to a best interest hearing, it be as it may. Thank you. Thank you. Thank you, Mr. Fine. Ms. Camden. Thank you, your honor. May it please the court, counsel. Jennifer Camden on behalf of the people. The trial court found the respondent unfit based on failure to make reasonable progress during two nine-month periods. And this court can affirm that finding based on either or both of them. I note that the reasonable progress standard, that that reasonable progress exists where objectively the parent's progress is sufficient, that the children can be returned to the parent in the near future. And at minimum, it requires a measurable or demonstrable progress toward reunification. In this case, the first nine-month period occurred from March to December 8th of 2018. And the respondent was incarcerated for all but the first month of that. And his service plans rated him as unsatisfactory during that period. And the court has already noted that incarceration does not toll that period in which the parent must make reasonable progress. I'd also note that a parent does not have unlimited time to make reasonable progress toward regaining custody of the child and that it's judged objectively. The respondent today argued that he was making efforts and doing what he could while incarcerated, but reasonable progress is judged objectively, not with respect to the particular efforts or circumstances of the parent. Also, this court should consider what happened after that first nine-month period. During the second nine-month period, when he was released from prison, he was released on June 3rd, 2019, about three months into that second nine-month period. Now, again, the service plans rated him unsatisfactory during the entire second nine-month period, and that alone would support the court's finding of unfitness. But I'd like to point out that the evidence showed that during that period, that second period, the respondent's progress was particularly unsatisfactory with regard to drugs. And that was the issue that had caused the children to be removed from the respondent's care. The court took judicial notice at the fitness hearing that on January 31st, 2018, the court had granted the emergency removal of the children from the respondent's care after that hearing on that date had been paused so that the respondent could go take a drug test. And when the hearing resumed, the results of the drug test were that he tested positive for methamphetamine, cocaine, and benzodiazepine. So that was the condition that led to the removal of the children, and that was the particular area in which the respondent would have been required to make reasonable progress in order toward the return of the children to him. So what happened after his release from prison in June 2019 was that he obtained a substance abuse assessment, which was a part of the service plan and required by that plan. But at that assessment, he lied to the substance abuse assessor and said that he hadn't used for seven years, when that was demonstrably untrue, as he tested positive for meth, cocaine, and benzodiazepine just 18 months prior to that. Then after this invalid substance abuse assessment, a couple months after that in September 2019, which was still within the second nine-month period at issue, he again tested positive for methamphetamine. And then after that, between September and November 2019, again, still within that second nine-month period, he failed to appear for four subsequent drug tests. So based on that evidence, the court's finding of failure to make reasonable progress during that second nine-month period was not against the manifest weight of the evidence. And while the respondent argues that the court blindly or solely relied only on the service plan assessments, the court had that evidence in front of it at the best interest hearing and relied on that evidence in its ruling. Now, the respondent argues that in the CN case, the Supreme Court stated that it's unjust to consider only a failure to comply with administrative directives in the service plan and that a court should consider whether a parent otherwise complied with the goals of the service plan outside the strictures of the response. The respondent didn't merely fail to comply with administrative directives. He spent most of the two time periods in prison and then relapsed into drug use upon his release, dodged drug tests, and as explained in the People's Answer Brief, caused emotional distress to his children at a visit and then stopped his visits altogether. Ms. Camden? Yes. I'd like to ask you a question. What do you think about the court's findings? Do you think there has to be a separate order, or do you think the docket entry is sufficient in this case? I don't believe that. I believe that the docket entry would have been sufficient in this case. Clearly, there was a basis to go ahead and proceed with the best interest hearing, and there was a final and appealable order from that. Well, the trial court made verbal findings, but it seems like there was a paucity, if you will, of a written order in this case. Do you believe from the state's perspective that the order terminating the parental rights was sufficient? Yes, Your Honor. Okay. I won't address the merits of the issue two, the best interest finding. I'll just stand on the state's answer brief with respect to that. The evidence of the best interest hearing did support the termination of parental rights. I'll move to issue three, the issue of the denial of counsel's motion to continue the best interest hearing, which the respondent challenges as an abuse of discretion and a denial of due process. The respondent would have to show not only a manifest abuse of discretion, but also prejudice to him. In this case, the court did not manifestly abuse its discretion in denying the continuance, where the respondent didn't have inadequate notice of the hearing. He isn't contesting the adequacy of the notice. He had a duty to follow the progress of the case and learn the date from counsel. In fact, counsel told the court that she had emailed the respondent with the reset hearing date. He provided counsel with no notice before the hearing that he wouldn't attend and provided the court and counsel with no reason after the hearing for his failure to attend. Respondent's counsel, when she requested the continuance, gave the court no indication as to when or whether respondent could or would appear. She also did not indicate that she had intended to present his testimony at the hearing. For those reasons, there was no abuse of discretion or prejudice resulting from the denial of that request. Although the respondent theorizes or speculates that he could have provided testimony as to his efforts and as to his feelings for the children, again, his counsel didn't seek continuance on those grounds. When asked at the best interest hearing whether she had intended to present any evidence, she declined. At any rate, that testimony, that evidence would not have been relevant at the best interest hearing because the focus would have been on the best interest of the children, not the respondent's feelings or efforts. Then with respect to- Well, Your Honor, as the court knows, the parents were in very different situations with the mother incarcerated and the writ hadn't been issued to get her there. So that probably would have been a due process violation because she was prevented from attending, whereas in this case, as the court noted in the CLT case, it was not a violation of due process for this hearing to be conducted. I'd also note that the state and the girls had an interest in finality as to the respondent, separate and apart from the interest in finality as to the mother, and that ultimately, as explained in the People's Answer Brief, there was no second best interest hearing because the issue with the guardianship. So ultimately, there was no judicial economy savings or cost savings that would have accrued from granting this. Don't you think Mr. Fine could make the argument that because, in fact, I think it was continued three more times after the father's termination, that there was no expediency required for this hearing to occur, that the court could have continued it for the father as well? Well, Your Honor, there's always a- the state and the girls always would have had an interest in expediency, in finality, in providing the girls with a stable, secure, and loving home. The evidence that the best interest hearing was that the girls were to their father and that they didn't want to see him. And so, in addition to that, under the three-factor Matthews versus Eldridge test, the second factor, the risk of erroneous deprivation, favors the state, both given the extensive procedures in the trial court that were employed, such as that the respondent was fully represented by counsel at the hearing, and that he did obtain notice of the hearing, and that there was no risk of erroneous deprivation, given the strength of the best interest evidence as to the respondent at the hearing, and there would have been no value to additional efforts to secure his presence. And I think this goes specifically to Your Honor's question, because, again, there was no indication as to when or whether he would choose to attend a future hearing, and he would have had little insight into the best interest of children that he hadn't had contact with for a year. So, and even though the mother got a continuance, both the state and the children had an interest in obtaining finality as to the respondent, independent of these issues as to the mother. And so, for these reasons, the court should affirm the termination order. Ms. Campbell, over the course of dealings, the trial court has an opportunity to judge the diligence on the part of people who appeared before him. In this situation, you had a person who had failed to comply with court orders, had not shown up for drug testing. How much do you think that could have come into play in the court's declining the motion for continuance? In other words, the court believing that here's a person that has shown from the past on his track record that he has not shown diligence in complying with court orders, including showing up in court. I'm not sure how much that played a factor. I don't believe the court referred to that consideration. It was not mentioned, but I'm just asking you, could that have possibly come into play? Let's see. Well, the court mentioned in denying the request for continuance that the respondent had been present at the fitness hearing. I think that went to the issue of notice of the best interest hearing. I think that the fact that respondent's counsel couldn't provide the court with any reason why the respondent had failed to appear or any indication as to when respondent could appear, so that the request for continuance was open-ended, that those were facts before the court when it denied the request for a continuance. If that answers the court's question. If the court has no further questions, then for the reasons stated in the people's answer brief, respectively, request that the court affirm. Thank you, Ms. Camden. Mr. Fine, rebuttal. Thank you, your justices, counsel. I want to focus on something that Justice Cates raised, and that is in this situation, because of these multiple continuances for the best interest portion, this wasn't a time of the essence rush to this hearing. Because in fact, what happened and what the, I believe is a November 18th permanency order shows, there was never going to be a best interest hearing because it was worked out as a guardianship, a subsidized guardianship. And that's kind of my point. Because the continuance wasn't granted for my age, an entirely different result transpired. And yes, I was going to address this in this final argument. This was an oral order. This was not a written order. I think what is to happen is not only is there to be an order, but there's to be an order consenting to the adoption by DCFS. What we have here is what happened was, is her motion to continue was granted. His was denied and substantially different results occur. And this gets back to the argument of what's in the best interest. And I truly understand that the best interest, the focus is on what is in the best interest of the child. Justices, there is no question that we have a seriously flawed father here. He is chemically dependent and he was chemically dependent before and after. That doesn't mean that nonetheless, he is not the biological father of this child. And yes, we truly understand that at a best interest hearing, maybe it wouldn't have gone any differently, but maybe it would. Maybe if Mike H had been there, he could have at least given his perspective. And later on, as the children grew up and went through life in the future, they would know that while their father was flawed and had these problems that he struggled with, nonetheless, he continued to love his children very much. And the court noted that in her written order during the fitness portion. What we're saying is in this point, there certainly would not been any extra cost. We certainly understand under Matthews how important the termination proceeding is. It's a virtually extinguishing the parental relationship. That is pretty important. And to take a hearing that's already been continued, and then continued because the mother wasn't written, based on a father who did appear at the fitness hearing and based on a father who apparently knew that he, there was a problem and asked to have the case appeal. I don't believe that you can say just because he's a drug user or chemically dependent makes him a father nonetheless. And so what we're asking the court here, primarily looking at this, that perhaps against the manifest way to the evidence was never in the ballpark. But when you consider some of the things that he did do in light of innumerable obstacles, he still wanted a chance to fight for his right. And the comment that the state mentioned, yes, he didn't have contact for the year, but I think if the records examined, the visitation was suspended for approximately. What we're arguing is it would be not had been no harm, no foul, no great cost, no great delay to give Mike Huff an opportunity to come before the court at a best interest hearing. And I guess in terms of yes, counsel has been correct. There was nothing filed subsequent, but I do believe that under the circumstances during the year of two 2020, during the circumstances of this global pandemic, even a mistake, which would normally maybe not have any merit, he could have been given the benefit of the doubt. Justice is fine is with regard to the continuance is the standard word apply is what's the harm? Are we supposed to apply the standard of did the judge abuse her discretion and denying the continuance? No, I think that it's not that it would be what's the harm. And maybe it's not. Maybe it's not effective to say that she abused her discretion. But I don't think we're offering it as an excuse. We're offering it as an explanation. Thank you. Justice, any further questions? No, thank you. Justice Wharton. Nothing. Okay, thank you both for your arguments. This matter will be taken under advisement and we will issue a disposition in due course. Have a great day. Thank you, Justices.